UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | ) | 1:08CV0805 |
| | ) | |
| Plaintiff | ) | |
| | ) | Magistrate Judge Kenneth S. McHargh |
| v. | ) | |
| | ) | |
| COVERALL No. AMER., INC., | ) | |
| | ) | |
| Defendant | ) | MEMORANDUM |
| | ) | AND ORDER |

McHARGH, MAG. J.

The original plaintiff JPMorgan Chase Bank, N.A. ("Chase") had filed a complaint against the original defendant Coverall North America, Inc. ("Coverall") alleging 1) conversion of personal property, 2) recovery of attorney fees and punitive damages, 3) unjust enrichment, 4) tortious interference with contract, and, 5) impairment of security interest.  (Doc. 1.)

Defendant Coverall filed an answer (doc. 6); as well as a third-party complaint  (doc. 7) against Dun and Bradstreet, Inc. ("Dun & Bradstreet," or, "D&B"); Carol Cassese; Patrick Cassese; and CPS Environmental Services, Inc. ("CPS"), which alleges breach of contract, indemnification, fraudulent inducement, negligent misrepresentation, conversion, unjust enrichment, and negligence.

The original parties have stipulated that all claims between Chase and Coverall have been settled.  (Doc. 49.)  In addition, the claims against third-party

defendant D&B have been transferred to the District of New Jersey, in accordance with a forum selection clause.  (Doc. 42, 46.)

Third-party-plaintiff[1] Coverall has filed a motion for summary judgment on counts three (fraudulent inducement) and four (misrepresentation) of its third party complaint against third-party defendants Carol Cassese and Patrick Cassese.  (Doc. 50.)  Third-party defendant Patrick Cassese has filed a motion for partial summary judgment (doc. 51), as well as an opposition to Coverall's motion (doc. 52.)

## I.  SUMMARY JUDGMENT

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  See Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court has held that:

> . . . Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

[1]  As the original plaintiff has settled with Coverall as the original defendant, the "third-party" claims are all that remain.  Henceforth, for simplicity's sake, the court will refer to third-party plaintiff Coverall as simply "plaintiff," and third-party defendants as simply "defendants."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence need not be in a

form admissible at trial in order to avoid summary judgment, but Rule 56(e)

requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions,
> answers to interrogatories, and admissions on file," designate "specific facts
> showing that there is a genuine issue for trial."

Id. at 324.

The Sixth Circuit in Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir.

1989), has interpreted Celotex and two related cases, Anderson v. Liberty Lobby,

Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith

Radio, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for

summary judgment motions.  Street points out that the movant has the initial

burden of showing "the absence of a genuine issue of material fact" as to an

essential element of the non-movant's case.  This burden may be met by pointing

out to the court that the respondent, having had sufficient opportunity for

discovery, has no evidence to support an essential element of his or her case.

Street, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve

the movant's denial of a disputed fact, but must "present affirmative evidence in

order to defeat a properly supported motion for summary judgment."  Id.  In ruling

on a motion for summary judgment, the court must construe the evidence, as well

as any inferences to be drawn from it, in the light most favorable to the party

3

opposing the motion.  Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990).

As regards Coverall's motion for summary judgment, because Coverall as plaintiff would have the burden of proof at trial, they have the burden of affirmatively showing the absence of a genuine issue of material fact in order to prevail on their motion for summary judgment.  Coverall must present evidence that would entitle them to a directed verdict if that evidence were not controverted at trial.  If the defendants respond to Coverall's motion with controverting evidence which demonstrates a genuine issue of material fact, the motion must be denied.  However, if, after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendants, then summary judgment will be entered on behalf of Coverall.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  See also Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1368-1369 (Fed. Cir. 2006); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986) (movant must establish all essential elements of claim or defense); McGrath v. City of Philadelphia, 864 F.Supp. 466, 473 (E.D. Pa. 1994) (citing National State Bank v. Federal Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992)).

## II.  FACTUAL BACKGROUND

This court must construe the evidence in the light most favorable to Patrick Cassese, as the party opposing Coverall's motion.  Coverall is a national franchiser

4

of commercial janitorial cleaning services.  In August 2006, Coverall entered into an account purchase agreement with defendants CPS, Carol Cassese and Patrick Cassese for the purchase of various commercial cleaning accounts of CPS.  The Confidential Account Purchase Agreement ("Purchase Agreement") provided for the purchase of accounts[2] and an inventory of cleaning supplies, as well as covenants not to compete by the Casseses.  (Doc. 50, PX A, Confidential Account Purchase Agreement.)

The Purchase Agreement identifies the "Seller" as CPS Environmental Services, Inc., which is owned 100% by Carol Cassese.  Patrick Cassese is identified as "a consultant and financial advisor to Seller."  (Doc. 50, PX A, at 1.)  The agreement was signed by Carol Cassese, as "authorized representative" for Seller, and by Carol Cassese, individually, and Patrick Cassese, individually.  Id. at 10.

Coverall states that it paid a total of $196,037.50 to CPS, Carol Cassese and Patrick Cassese.  (Doc. 50, at 3; and PX B, Vlaming aff., at ¶2.)  The purchase price of $234,000 identified in the Purchase Agreement was "subject to adjustments as provided in this Agreement, for the Accounts . . . less $120,000 payable to Carol Cassese and Patrick J. Cassese as consideration for their non-competition covenants."  (Doc. 50, PX A, at 3, ¶ 7.)

Coverall says that "CPS, Carol Cassese and Patrick Cassese failed to disclose the existence of any security interest, lien, or encumbrance upon the accounts or

---

[2] Counsel for Chase stated that CPS sold all of its janitorial contracts to Coverall, with a single exception.  (Doc. 32, Cannon aff., at ¶ 3.)

inventory of CPS at the time of the Transaction." (Doc. 50, at 3.)  Coverall relied on the disclosures, representations and warranties of CPS, Carol Cassese and Patrick Cassese in closing the transaction, and  paying consideration to them for the accounts and inventory purchased.  Id. at 3-4.  In addition, "Coverall conducted exhaustive due diligence related to the [account purchase] transaction,"  including audits of the account contracts, and engaged Dun & Bradstreet to perform a lien search.  (Doc. 50, PX B, Vlaming aff., at ¶3.)

In summary, Coverall asserts that it "completed the Transaction without knowledge of any security interest, lien or encumbrance on the accounts or inventory of CPS." (Doc. 50, at 3.)  Coverall states that Coverall subsequently learned that Chase did have a purported security interest in and lien upon the accounts and inventory purchased by Coverall from CPS.  Id. at 4.

 Patrick Cassese maintains that he did not make any written representations or warranties to Coverall regarding the assets and accounts of CPS, but simply entered into a two-year non-compete covenant with Coverall.  (Doc. 51, at 2.)


### III.  COVERALL'S MOTION FOR SUMMARY JUDGMENT

Coverall moves for summary judgment on counts 3 (fraudulent inducement) and 4 (negligent misrepresentation)[3] of its third-party complaint against Carol

---

[3]  Coverall also mentions count 5 (conversion) in passing, doc. 50, at 1, but its brief does not address the conversion claim.

Cassese and Patrick J. Cassese.  (Doc. 50, at 1.)  As plaintiff, Coverall has the burden of affirmatively showing the absence of a genuine issue of material fact in order to prevail on the motion.  Saab, 434 F.3d at 1368-1369; Fitzpatrick, 2 F.3d at 1115 ; Fontenot, 780 F.2d at 1194.

## A.  Fraudulent Inducement

A claim for fraudulent inducement occurs "when a party is induced to enter into an agreement through fraud or misrepresentation."  ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 578 (1998).  To recover, the plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to its detriment.  Id.

Under Ohio law, the elements of fraudulent misrepresentation, or fraudulent inducement, are:

> (1) a representation or, where there is a duty to disclose, concealment of a fact,
> (2) which is material to the transaction at hand,
> (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (4) with the intent of misleading another into relying upon it,
> (5) justifiable reliance upon the representation or concealment, and
> (6) a resulting injury proximately caused by the reliance.

Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (1984) (per curiam); Funk v. Durant, 155 Ohio App.3d 99, 103, 799 N.E.2d 221, 224 (Ohio Ct. App. 2003).  Without evidence of a representation, a claim for fraudulent inducement cannot be made.  Countrymark Cooperative, Inc. v. Smith, 124 Ohio

App.3d 159, 172, 705 N.E.2d 738, 746 (Ohio Ct. App. 1997) (citing Burr v. Stark

Cty. Bd. of Commrs., 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986)).

In its motion for summary judgment, Coverall contends that the conduct of

Carol Cassese and Patrick Cassese in causing Coverall to enter into the transaction

"clearly constituted fraudulent inducement." (Doc. 50, at 6.) As to the first

element, Coverall asserts:

> Defendants Patrick and Carol Cassese made representations of fact to
> Coverall during negotiations of the Transaction regarding
> encumbrances on the assets being purchased by Coverall from CPS.
>
> Specifically, Carol Cassese expressly stated and warranted in the
> Confidential Account Purchase Agreement memorializing the
> Transaction that "there are no beneficial (sic), creditor (sic), or other
> parties that may possess or claim an interest in the assets of the Seller
> [CPS]." See Confidential Purchase Agreement, Exhibit A hereto, at
> Par. 4B. In addition, Patrick Cassese conducted substantially all of
> the negotiations related to the Transaction on behalf of Patrick
> Cassese, and executed the Confidential Purchase Agreement in which
> the false representations of fact were made, and the false
> representations must therefore be imputed to him as well.

(Doc. 50, at 7.) Other than a reference to the Purchase Agreement, Coverall cites to

no evidence in support of its assertions. Id.

### 1. Patrick Cassese

Patrick Cassese responds that he did not make any written representations

or warranties to Coverall regarding title to the assets and accounts of CPS. (Doc.

51, at 4; doc. 52, at 1.) He contends that CPS alone (as Seller) made warranties

relating to the assignability or unencumbered nature of any accounts. (Doc. 51, at

4, citing doc. 50, PX A, at 1.) Further, he states that only Carol Cassese made

8

individual and personal warranties.  (Doc. 51, at 4, citing PX A, at 2.)  Patrick

Cassese also refers to the affidavit of Coverall's general counsel, which avers that

"Coverall obtained written warranties and representations from CPS and Carol

Cassese that the transferred accounts were free of any liens or encumbrances."

(Doc. 50, PX B, Vlaming aff., at ¶4.)

> The Purchase Agreement supports Patrick Cassese's assertions.  As noted

earlier, the Purchase Agreement identifies the "Seller" as CPS, owned 100% by

Carol Cassese. (Doc. 50, PX A, at 1.)  The "Seller's Warranties" include:  "All

Accounts in Schedule A are fully assignable to Coverall and are unencumbered."

(PX A, at ¶3.C.)  Under the section entitled "Carol Cassese's Warranties and

Indemnifications," Carol Cassese individually and personally warrants that she

owns 100% of CPS stock, and "[t]here are no beneficial, creditor, or other parties

that may possess or claim an interest in the assets of the Seller."  (PX A, at ¶4.B.)

Further, she agrees to indemnify and hold harmless Coverall from any claims.  (PX

A, at ¶4.C.)

> There are no similar provisions in the Purchase Agreement relating to

Patrick Cassese.  The Purchase Agreement contains no representations or

warranties to Coverall  by Patrick Cassese at all, particularly none concerning the

existence of liens or security interests.  Although there is reference in the Vlaming

affidavit to Coverall's reliance on "representations" made by Patrick Cassese, see

doc. 50, PX B, at ¶5,  there is no indication or evidence of what, if any,

representations he is supposed to have made.   See generally doc. 50, at 7.

The evidence shows that Patrick Cassese initiated contact with Coverall concerning the purchase of the CPS accounts.  (Doc. 50, PX B, Vlaming aff., at ¶2.) There is also undisputed evidence that he signed the Purchase Agreement.  (Doc. 50, PX A, at 10.)  However, as Patrick Cassese points out, the Purchase Agreement included a non-compete agreement binding him.  (Doc. 50, PX A, at ¶5.)  There is no other indication in the Purchase Agreement of his involvement in the sales transaction, other than a prefatory mention of him as a "consultant and financial advisor to Seller."  Id. at 1.

Coverall has put forward no evidence of any representations made by Patrick Cassese.  Without evidence of a representation, a claim for fraudulent inducement cannot be made.  Countrymark Cooperative, 124 Ohio App.3d at 172, 705 N.E.2d at 746.

Coverall has failed to carry its burden (as plaintiff) of affirmatively showing the absence of a genuine issue of material fact in order to prevail on their motion for summary judgment against Patrick Cassese on the fraudulent inducement claim. Coverall's motion for summary judgment (doc. 50) on this claim is denied, and Patrick Cassese's motion (doc. 51, at 9-12) is granted on this claim.

### 2.  Carol Cassese

Carol Cassese has failed to respond to Coverall's motion.  Where the non-moving party does not respond to a motion for summary judgment, the court must intelligently and carefully review the legitimacy of the motion.  Guarino v. Brookfield Township Trustees, 980 F.2d 399, 407 (6th Cir. 1992).  The court may

10

rely on the facts presented and designated by the moving party.  In re St. Clair Clinic, Inc., 73 F.3d 362, 1996 WL 6531, at *2 (6th Cir. 1996) (TABLE, text in WESTLAW) (citing Guarino, 980 F.2d at 404).  Accord, Cacevic v. City of Hazel Park, 226 F.3d 483, 491 (6th Cir. 2000).  In addition to the moving party's arguments, the court will "consider inferences that are apparent from the designated evidence and favorable to the nonmoving party."  Id.

Where no response to a summary judgment motion has been received, the court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact."  Spurlock v. Whitley, No. 02-5114, 2003 WL 22474617 (6th Cir. Oct. 29, 2003) (quoting Street, 886 F.2d at 1479-1480).  The nonmoving party is deemed to have waived its opportunity to designate specific facts demonstrating the existence of a genuine issue.  Spurlock, 2003 WL 22474617 (citing Guarino, 980 F.2d at 405).  It is not the role of the court to develop facts for the nonmoving party.  Id.

Coverall has presented evidence that Carol Cassese made material representations of fact concerning the absence of encumbrances on the assets being purchased by Coverall from CPS.  (Doc. 50, at 6-7; doc. 50, PX A, at ¶¶ 3.C, 4.B.; PX B, Vlaming aff., at ¶5.)  These representations were made less than one year after Carol Cassese signed a Promissory Note, and a Commercial Security Agreement, which gave the lender (Chase) a security interest in the assets in question.  (Doc. 50, at 8.)  The court finds that Carol Cassese's material representations of fact to Coverall were "made falsely, with knowledge of [their]

11

falsity, or with such utter disregard and recklessness as to whether [they were] true or false that knowledge may be inferred." Cohen, 10 Ohio St.3d at 169, 462 N.E.2d at 409. See generally Shepherd v. Shea, No. 17090, 1995 WL 623301, at *4 (Ohio Ct. App. Oct. 25, 1995) (knowledge element may be established through circumstantial evidence).

Coverall points out that the defendants initiated the transaction, and asserts that the misrepresentations were made to induce Coverall to enter into the transaction.  (Doc. 50, at 9, citing PX B, Vlaming aff., at ¶¶ 2-3.)  Coverall conducted due diligence during the negotiations of the transaction, and secured written representations that there were no liens or encumbrances upon the assets, and thus its reliance upon the defendants' representations was justified.  (Doc. 50, at 10.)  Finally, Coverall states that it paid $190,000 for the assets, which turned out to be subject to liens held by Chase in excess of $180,000.  (Doc. 50, at 10-11, citing PX B, Vlaming aff., at ¶¶ 2, 6.)

Coverall has placed evidence before the court affirmatively showing the absence of a genuine issue of material fact concerning its fraudulent misrepresentation claim against Carol Cassese.  The motion for summary judgment (doc. 50) is granted against Carol Cassese on that claim.

### B.  Negligent Misrepresentation

The elements of negligent misrepresentation are as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business

12

transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Delman v. City of Cleveland Heights, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837-838 (1989).  "False information" is a necessary element, as is "justifiable reliance." Crown Property Dev., Inc. v. Omega Oil Co., 113 Ohio App.3d 647, 656-657, 681 N.E.2d 1343, 1349 (Ohio Ct. App. 1996); Zuber v. Dep't of Insurance of Ohio, 34 Ohio App.3d 42, 45, 516 N.E.2d 244, 247 (Ohio Ct. App. 1986).  "Reliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation."  Crown Property, 113 Ohio App.3d at 657, 681 N.E.2d at 1349.

### 1. Patrick Cassese

Patrick Cassese again stresses that Coverall points to no evidence of any representations made by him.  (Doc. 51, at 12; doc. 52, at 1.)  He points out that negligent misrepresentation cannot consist of omissions; rather, "there must be some affirmative false statement."  Id.

In Leal v. Holtvogt, the court found that a concealment could not support a claim of negligent misrepresentation, "since it was not an affirmative false statement."  Leal v. Holtvogt, 123 Ohio App.3d 51, 62, 702 N.E.2d 1246, 1253 (Ohio Ct. App. 1998).  The court in Leal quoted Textron Fin. Corp. v. Nationwide Mut. Ins. Co., which stated that:  "Negligent misrepresentation does not lie for omissions; there must be some affirmative false statement."  Textron Fin. Corp. v. Nationwide

13

Mut. Ins. Co., 115 Ohio App.3d 137, 149, 684 N.E.2d 1261, 1269 (Ohio Ct. App. 1996).

Coverall does not point to any evidence of any representations made by Patrick Cassese.  See generally doc 50.  Coverall has failed to carry its burden of affirmatively showing the absence of a genuine issue of material fact in order to prevail on their motion for summary judgment against Patrick Cassese on the negligent misrepresentation claim.  Coverall's motion for summary judgment (doc. 50) on this claim is denied, and Patrick Cassese's motion (doc. 51, at 12-13) is granted on this claim.

### 2.  Carol Cassese

As mentioned earlier, Carol Cassese has failed to respond to Coverall's motion.  She is therefore deemed to have waived her opportunity to designate specific facts demonstrating the existence of a genuine issue.  Spurlock, 2003 WL 22474617 (citing Guarino, 980 F.2d at 405).

The court notes, however, that while Coverall "may allege, in the alternative, both fraud and negligent misrepresentation as to the same course of conduct, a defendant cannot be found to have committed an act both intentionally and negligently."  Textron, 115 Ohio App.3d at 149, 684 N.E.2d at 1269.  The court has found that Coverall should prevail on its claim of fraudulent misrepresentation against Carol Cassese, thus the claim of negligent misrepresentation cannot survive.

14

<u>C.  Summary</u>

Coverall's motion for summary judgment (doc. 50) is granted against Carol Cassese on the fraudulent inducement claim, and denied on the negligent misrepresentation claim.  The motion is denied on both the fraudulent inducement and negligent misrepresentation claims against Patrick J. Cassese.

## IV.  PATRICK CASSESE'S MOTION FOR SUMMARY JUDGMENT

Patrick J. Cassese has filed a cross-motion for partial summary judgment against Coverall on Counts 6 (unjust enrichment), 3 (fraudulent inducement), and 4 (negligent misrepresentation), of its third-party complaint against him.  (Doc. 51.) The court has already determined that summary judgment is granted in favor of Patrick Cassese on the fraudulent inducement and negligent misrepresentation claims, because Coverall has failed to make a showing sufficient to establish the existence of an element essential to their case, namely, evidence of any specific representations (whether fraudulent or negligent) made to Coverall by Patrick Cassese.  See generally doc. 54, at 3-4.

Coverall argues that Patrick Cassese's motion cannot be granted because "he has offered no evidence in support of his motion."  (Doc. 54, at 3.)  However, his burden as defendant-movant is met by pointing out to the court that Coverall, having had sufficient opportunity for discovery, has no evidence to support an essential element of the relevant cause of action.  Street, 886 F.2d at 1479.  Patrick

Cassese has met that burden.  See generally doc. 51, at 9-13; doc. 52, at 1; doc. 55, at 4-5.

### A.  Unjust Enrichment

Patrick Cassese argues that Coverall's claim of unjust enrichment against him cannot succeed because there is an express contract which covers the same subject.  (Doc. 51, at 6.)  Although Coverall claims that he was "unjustly enriched by [his] receipt of payment from Coverall for accounts and inventory of CPS," doc. 7, at ¶ 43, Patrick Cassese asserts that the "Seller" was CPS, which was owned 100% by Carol Cassese.  (Doc. 51, at 6, citing doc. 50, PX A, at 1.)

Patrick Cassese admits that he received a portion of the total consideration paid under the Purchase Agreement; however, he states that his receipt of these funds was in consideration for his non-compete agreement.  (Doc. 51, at 6-7.)

According to the terms of the Purchase Agreement,

> Carol Cassese and Patrick J. Cassese in consideration of the payments set forth in this Agreement shall not, either directly or indirectly, compete with Coverall for any account sold to Coverall for a period of 2 years . . .

(Doc. 50, PX A, ¶5.)  The section entitled "Purchase Price" reflects that "Coverall agrees to pay Seller [CPS] $234,000 . . . less $120,000 payable to Carol Cassese and Patrick J. Cassese as consideration for their non-competition agreements."  (PX A, ¶ 7.)  Patrick Cassese signed the Purchase Agreement as an individual.  (PX A, at 10.)  Coverall's General Counsel averred that Coverall entered into the Purchase Agreement "for the purchase of various commercial cleaning accounts of CPS, and

16

to secure covenants of non-competition of Carol Cassese and Patrick Cassese."  (Doc. 50, PX B, Vlaming aff., at ¶ 2.)

Thus, it is clear from its terms that the Purchase Agreement had a dual purpose:  1) Coverall sought to purchase commercial assets of CPS, and 2) Coverall sought to obtain non-compete agreements from Carol Cassese and Patrick Cassese. As sole owner of CPS, Carol Cassese was bound by the terms of both aspects; Patrick as an individual was not.

Unjust enrichment is an equitable doctrine in which the law implies a promise to pay the reasonable value of services rendered where one confers a benefit upon another without receiving just compensation for those services. Weiper v. W.A. Hill & Assocs., 104 Ohio App. 3d 250, 261-262, 661 N.E.2d 796, 804 (Ohio Ct. App. 1995) (citing Aultman Hosp. Ass'n v. Community Mut. Ins. Co., 46 Ohio St. 3d 51, 55, 544 N.E.2d 920, 924 (1989); Norton v. City of Galion, 60 Ohio App. 3d 109, 110, 573 N.E.2d 1208, 1209 (Ohio Ct. App. 1989)).  A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment since, absent evidence of fraud, illegality, or bad faith, compensation is governed by the contract.  Id. at 262, 661 N.E.2d at 804 (internal citations omitted); Eyerman v. Mary Kay Cosmetics, Inc., 967 F.2d 213, 222 (6th Cir. 1992).

Coverall has not alleged that Patrick Cassese violated the terms of his non-compete agreement.  See generally doc. 7, at ¶¶ 42-45.  Even had he done so, the action would be governed by breach of contract, or a related cause of action, not unjust enrichment.

17

In fact, Coverall states that it is not suing Patrick Cassese "for breach of his non-compete agreement; it is suing him for unjust enrichment relating to the payments made by Coverall under the larger asset purchase agreement." (Doc. 54, at 2-3.)  However, as already discussed, under the terms of the Purchase Agreement, Patrick Cassese was only receiving money as consideration for his non-competition agreement.  (Doc. 50, PX A, ¶¶5, 7.)

### B.  Parol Evidence

Both parties argue about the admissibility of parol evidence.  (Doc. 51, at 6-8; doc. 54, at 1-3.)  However, neither party has submitted any evidence concerning any statements or representations that Patrick Cassese may or may not have made, whether during the negotiations or at any other time.  For example, in its motion, Coverall claims, without evidentiary support, that "Patrick Cassese conducted substantially all of the negotiations related to the Transaction on behalf of Patrick Cassese . . ." (Doc. 50, at 7.)  Read literally, this would pertain to the only terms of the Purchase Agreement concerning him, that is, the non-compete.  In any event, as has been repeatedly stated herein, Coverall has submitted no evidence concerning any representations made by Patrick Cassese.  There is no parol evidence at issue.

### C. Summary

Patrick Cassese's cross-motion for partial summary judgment (doc. 51) is GRANTED on the claims of unjust enrichment, fraudulent inducement, and negligent misrepresentation against him.  Coverall has failed to designate specific facts showing that there is a genuine issue for trial on these claims.

18

As discussed earlier, Coverall's motion for summary judgment (doc. 50) is GRANTED against Carol Cassese on the fraudulent inducement claim, and DENIED on the negligent misrepresentation claim.  Coverall's motion is DENIED on both the fraudulent inducement and negligent misrepresentation claims against Patrick J. Cassese.

IT IS SO ORDERED.


Dated:  Jan. 11, 2010                          /s/ Kenneth S. McHargh
                                                Kenneth S. McHargh
                                                United States Magistrate Judge

19